# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENNETT DEVERMONT,<br><br>                                Plaintiff,<br><br>   vs.<br><br>CITY OF SAN DIEGO, CHIEF WILLIAM LANSDOWNE, OFFICER JOHN PERDUE ID#6553, and DOES 1-10, inclusive,<br><br>                                Defendants. | CASE NO. 12-CV-1823-BEN (KSC)<br><br>**ORDER**<br><br>**(1) GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>**(2) DISMISSING REMAINING CAUSES OF ACTION WITHOUT PREJUDICE**<br><br>[Docket No. 42] |

Before this Court is a Motion for Summary Judgment filed on behalf of Defendants City of San Diego, Chief William Lansdowne, and Officer John Perdue. (Docket No. 42). Plaintiff has not filed any opposition. For the reasons stated below, this Motion is **GRANTED** in part, and the Court **DISMISSES WITHOUT PREJUDICE** the remainder of this action.

## BACKGROUND

I. Alleged Misconduct

This matter involves accusations of police misconduct at a DUI checkpoint in downtown San Diego, California. Shortly after midnight on July 2, 2011, Plaintiff Sennett Devermont arrived at a checkpoint intended to identify individuals who are

driving under the influence (DUI). (Devermont Dep., Def. Ex. A, at 29:11-12).[1] At the checkpoint, Plaintiff was approached by Officer John Perdue. (Compl. ¶ 8; Perdue Decl., Def. Ex. B, ¶ 5). Perdue has been employed by the San Diego Police Department since October 2008. (Perdue Decl. ¶ 1). He received training in the signs and symptoms of persons under the influence of alcohol and drugs at the police academy, as well as at subsequent classes. (*Id.* ¶ 2). He has been recognized for making at least 40 DUI arrests, and estimates that he had completed more than 100 evaluations as of the date of the incident. (*Id.* ¶¶ 2, 7).

Perdue allegedly asked for, and received, Plaintiff's driver's license. (Compl. ¶ 8). Perdue asserts that he "smelled a faint odor of alcohol coming from [Plaintiff] or the vehicle area." (Perdue Decl. ¶ 5). Plaintiff refused to answer further questions. (Compl. ¶¶ 8, 9; Perdue Decl. ¶¶ 6, 8). Officer Perdue declares that he observed that Plaintiff's eyes were red and bloodshot. (Perdue Decl. ¶ 6). Perdue ordered Plaintiff to step out of his car, and Plaintiff complied. (Compl. ¶ 8; Perdue Decl. ¶ 9).

Perdue and other officers sought to conduct field sobriety tests (FSTs). (Compl. ¶¶ 8,9; Perdue Decl. ¶ 10; Devermont Dep. at 60:18-61:12). Plaintiff refused to perform these tests. (Compl. ¶¶ 8,9; Perdue Decl. ¶ 10; Devermont Dep. at 61:25-62:9).

At some point during the encounter, Plaintiff was placed in handcuffs for approximately twenty to thirty minutes. (Devermont Dep. at 70:22-23). Plaintiff alleges that he had to sit on the curb, in view of passing traffic, but no evidence of this has been presented to the Court. (Compl. ¶¶ 9, 10). Plaintiff did not complain of any discomfort from the handcuffs to the officers. (Devermont Dep. at 70:24-71:7). Plaintiff also alleges that during his detention, Officer Prokop entered Plaintiff's car without permission, searched the interior, and looked through Plaintiff's wallet.

---

[1] The Court notes that although the parties occasionally refer to the incident as happening on July 1, 2011, or as occurring around 12:25 p.m., deposition testimony places the events shortly after midnight.

1  (Compl. ¶ 10). No evidence of this has been presented to the Court.

2  Perdue spoke to his sergeant, and Plaintiff was informed that because the officer
3  believed he consumed alcohol, that he was required to undergo either a Breathalyzer
4  test or a blood draw. (Perdue Decl. ¶ 13). Plaintiff cooperated with the Breathalyzer,
5  which revealed that his blood alcohol content of 0.00%. (Compl. ¶ 11, Perdue Decl.
6  ¶ 14). Plaintiff was then released. (Perdue Decl. ¶ 15).

7  Plaintiff alleges that an administrative investigation of Prokop and Perdue took
8  place, but that they were exonerated from wrongdoing. (Compl. ¶ 13).

9  Plaintiff is the owner of two business intended to publicize police activity. One
10 business publicizes the locations of DUI checkpoints, and the second publicizes "speed
11 traps." (Devermont Dep. at 15:20-16:6; 79:9-16; 92:2-20). Plaintiff has also used
12 signs to warn drivers of checkpoints. (*Id.* at 106:19-25). On the date of this incident,
13 Plaintiff recorded his encounter and later posted it on the website You Tube. (*See id.*
14 at 37:16-38:15, Compl. ¶ 12). Plaintiff positioned a cell phone in the passenger door
15 because he knew where the DUI checkpoint was located. (Devermont Dep. at 37:16-
16 38:18). If true, Plaintiff has not submitted the video recording as evidence.

17 II. Procedural History

18 On July 24, 2012, Plaintiff filed a complaint alleging violations of his civil rights
19 pursuant to state and federal law. Plaintiff listed nine causes of action: (1) violation of
20 42 U.S.C. § 1983 by individual defendants, (2) violation of 42 U.S.C. § 1983 by the
21 City of San Diego and Defendant "Emerson," (3) assault and battery, (4) false arrest,
22 (5) civil conspiracy, (6) intentional infliction of emotional distress, (7) negligence, (8)
23 negligent employment/retention/supervision, and (9) violations of the California Civil
24 Rights Act.

25 Defendants filed the instant Motion for Summary Judgment as to all causes of
26 action on March 12, 2014. The matter was set for a hearing before this Court on May
27 12, 2014. Pursuant to the Civil Local Rules of the Southern District of California,
28

1Plaintiff was required to file a written statement of opposition or non-opposition no later than April 28, 2014. CIV. L.R. 7.1(e)(2). Despite receiving notice in excess of the 28-day minimum required by Local Rule 7.1(e)(1), Plaintiff did not file a statement of opposition or request an extension of time to respond. The Court notes that Plaintiff is represented by counsel, and has a history of failing to comply with deadlines and court orders. (Docket Nos. 23, 32, 25, 32, 35, 39, 41).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In considering a summary judgment motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255.

A moving party bears the initial burden of showing there are no genuine issues of material fact. *Travelers Indem. Co. v. Arena Grp. 2000, L.P.*, No. 05-cv-1435, 2007 WL 4170421, at *5 (S.D. Cal. Nov. 20, 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.* The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.*

The moving party must support their assertion that a fact is not subject to genuine dispute by either a) citing to materials in the record, such as depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials; or b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1). To survive summary judgment, a plaintiff must set forth non-speculative evidence of

1  specific facts, not sweeping conclusory allegations. *Cafasso, U.S. ex rel. v. Gen.*
2  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (citations omitted).
3       On a motion for summary judgment, a party does not necessarily have to produce
4  evidence in a form that would be admissible at trial, as long as the requirements of
5  Federal Rule of Civil Procedure 56 are met. *Fraser v. Goodale*, 342 F.3d 1032, 1036-
6  37 (9th Cir. 2003) (citation omitted). Where material cited to support or dispute a fact
7  cannot be presented in a form that would be admissible in evidence, a party is permitted
8  to object. FED. R. CIV. P. 56(c)(2). Affidavits or declarations used to support or oppose
9  a motion must be made on personal knowledge, set out facts that would be admissible
10 in evidence, and show that the affiant or declarant is competent to testify on the matters
11 stated. FED. R. CIV. P. 56(c)(4).
12      "Only disputes over facts that might affect the outcome of the suit under the
13 governing law will properly preclude the entry of summary judgment. Factual disputes
14 that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. As
15 a general rule, the "mere existence of a scintilla of evidence" will be insufficient to
16 raise a genuine issue of material fact; there must be evidence on which the jury could
17 reasonably find for the non-moving party. *Id.* at 252.
18      A motion for summary judgment cannot be granted simply because the non-
19 moving party fails to file or serve its opposition in violation of a local rule. *Henry v.*
20 *Gill Indus. Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). The moving party is only entitled
21 to summary judgment where it has shown that there are no genuine issues of material
22 fact, even if the nonmoving party does not offer materials in support of its opposition.
23 *Id.* It is an abuse of discretion for a district court to grant a motion for summary
24 judgment where the movant's papers are insufficient to support that motion or on their
25 face reveal a genuine issue of material fact. *Id.* However, an unopposed motion for
26 summary judgment may be granted where examination of the claim reveals that it is
27 appropriate to dispose of on summary judgment. *See id.* (proper to grant unopposed
28

summary judgment on frivolous counterclaim).

**DISCUSSION**

Upon review of the complete record and the briefing before this Court, the Court determines that summary judgment is appropriate on Counts One and Two, and appropriate as to Counts Five and Eight, to the extent they rely upon federal law. This Court declines to exercise jurisdiction over the remaining state law causes of action and **DISMISSES** the case.

I. First Cause of Action: 42 U.S.C. 1983 Violation of Civil Rights - Excessive Force, False Arrest, Retaliation for Exercising First Amendment Rights, and Conspiracy to Deprive Civil Rights

Plaintiff brings his first § 1983 cause of action against "all individual defendants." (Compl. at 4). Plaintiff contends that Perdue and Does-10 "intentionally and maliciously" deprived Plaintiff of his First, Fourth, and Fourteenth Amendment rights. (*Id.* ¶ 16). Plaintiff accuses them of subjecting him to "excessive and unreasonable force and to an unlawful arrest and booking, conspired together to justify the unlawful uses of force, illegal detentions and arrest of the plaintiff." (*Id.*)[2] These defendants are accused of retaliating against Plaintiff for exercising his First Amendment rights, unreasonable searches and seizures, violations of due process, and a corrupt effort to conceal violations of Plaintiff's rights with manufactured facts. (*Id.* ¶ 17).

Defendants seek to dismiss this cause of action on the ground that the "arrest," if any, was lawful and supported by probable cause. Defendants also contend that, even if not lawful, Officer Perdue's actions were protected by qualified immunity. Plaintiff's cause of action, although not always clear with regard to which specific action he claims violated his rights, appear to stem from the claim that Defendants

---

[2] The Court notes that the reference to a booking appears to be a misstatement. There is no evidence before this Court that Plaintiff was ever booked.

violated his constitutional rights by detaining him at the checkpoint, placing him in uncomfortable handcuffs, and conducting a subsequent search of his person and vehicle.[3]

The Court determines that the undisputed facts establish that the detention of Plaintiff was constitutional. The evidence presented describes nothing more than a limited investigatory stop and detention of Plaintiff, lasting approximately 20-30 minutes, and concluding with Plaintiff's release. "The Fourth Amendment permits brief investigatory stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, __ S.Ct. __, 2014 WL 1577513, at *3 (Apr. 22, 2014) (citation omitted) (approving stop of DUI driver based on anonymous tip); *see also United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). Officers may also use handcuffs during a detention for officer safety, even where the person is not under arrest. *See United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981) ("Strong but reasonable measures to insure the safety of the officers or the public can be taken without necessarily compelling a finding that the suspect was in custody."). The Court notes that although Defendants suggest that Plaintiff was merely detained, and not arrested, they do not present argument or authority on the question.[4]

A claim for unlawful detention or arrest is cognizable under § 1983 as a Fourth Amendment violation if the detention or arrest was without probable cause or other justification. *See Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 964 (9th

---

[3] The Complaint does not challenge the legality of the checkpoint itself, or suggest that there was any use of force beyond being detained and placed in handcuffs. Plaintiff's reference to retaliation for his First Amendment rights is vague, and may refer to his refusal to answer questions or assertion of his right not to cooperate. Plaintiff at no point suggests in his Complaint that any Defendant was aware of his history of publicizing checkpoints or speed traps.

[4] "There is no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2001) (citation omitted).

Cir. 2001) (citation omitted). Probable cause to justify an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, or is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted); *see also Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990). Probable cause requires a "fair probability," not certainty or a preponderance of the evidence. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citation omitted). An investigatory detention, on the other hand, need only be supported by reasonable suspicion. *Valdes-Vega*, 738 F.3d at 1078. "The reasonable-suspicion standard is not a particularly high threshold to reach . . . the likelihood of criminal activity need not rise to the level required for probable cause . . ." *Id.*

Defendants argue that a reasonable officer would have believed that there was probable cause to arrest Plaintiff. Defendants appear to be arguing that Plaintiff could have been lawfully arrested for driving under the influence. Defendants point to case law supporting probable cause where an officer observes the smell of alcohol on breath, slurred speech, and bloodshot eyes. (Mot. at 6). They also contend that refusal to take FSTs may be considered as consciousness of guilt and can support a DUI conviction. (*Id.*) They argue for deference to the observations of an experienced officer, and contend that experience shows that individuals who refuse to answer questions or take FSTs are highly likely to be under the influence. (*Id.* at 7).

In the deposition evidence submitted by Defendants, Plaintiff conceded that he refused to answer Perdue's questions, refused to perform the field sobriety tests, and prevented an officer from performing a test by covering his eyes. Perdue stated in his sworn declaration that he smelled a faint odor of alcohol coming from Plaintiff or the vehicle area, and observed red and bloodshot eyes. Plaintiff has not disputed his observations. *See* FED. R. CIV. P. 56(e) ("If a party fails to properly support an

assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion"). The Court does not take into account the fact that the Plaintiff admitted to having been nervous, as there is no evidence before this Court to indicate that any officer was aware of this fact.

The undisputed facts are sufficient to establish that there was at least reasonable suspicion to conduct an investigatory detention of Plaintiff for driving under the influence. Plaintiff was driving a vehicle when he stopped at the checkpoint. The odor of alcohol coming from either Plaintiff or the car he was driving strongly supported a reasonable belief that Plaintiff had been drinking or had an open container in his vehicle. Plaintiff's red and bloodshot eyes are also possible signs of alcohol consumption. (Perdue Decl. ¶ 8; Flake Decl., Def. Ex. C, ¶ 6). A reasonable officer who smells an odor of alcohol and observes red and bloodshot eyes, where the passenger refuses to answer questions or perform field sobriety tests, could reasonably conclude that there was a fair probability that the driver had been driving under the influence.

Even if the detention were a constitutional violation, Perdue would be entitled to qualified immunity. The doctrine of qualified immunity generally protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court enunciated a two-step protocol for determining whether qualified immunity applies. First, a court considers whether the facts alleged show the officer's conduct violated a constitutional right. 533 U.S. at 201. If so, the court considers whether the right was "clearly established." *Id.* However, although it is "often appropriate" to determine whether qualified immunity applies using the two-step

*Saucier* protocol, the sequence is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). District courts may determine the order of decisionmaking that will "best facilitate the fair and efficient disposition of each case." *Id.* at 242.

This Court concludes that it would not be clear to a reasonable officer that his conduct was unlawful. In the wake of Perdue's claim of qualified immunity, Plaintiff has not pointed to any basis from which this Court could conclude that it is "clearly established" that an arrest on this basis would be unconstitutional. Summary judgment is therefore **GRANTED**.

II.  Second Cause of Action: 42 U.S.C. 1983 Violation of Civil Rights - Unlawful Custom and Practice

Plaintiff's Second Cause of Action is a "*Monell* claim" against the City and Defendant "Emerson."[5] Plaintiff contends that the "policies, customs, practices and usages" of the City and the Police Department violate the First, Fourth, and Fourteenth Amendments. (Compl. ¶ 22). Plaintiff claims that these policies encourage employing, deploying ,and retaining officers with a "propensity for brutality, dishonesty, bigotry, and numerous other serious abuses of their duties . . ." (*Id.*) He further claims that the policies or customs permit the occurrence of wrongs through deliberate indifference to abuses, failures to properly investigate, and failures to properly discipline. (*Id.* ¶ 23). Plaintiff has submitted no evidence of this.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978), the United States Supreme Court found that a municipality could be held liable under § 1983. A municipality may be directly sued where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Although not authorized by written law, a practice may be so "permanent and

---

[5] The identity of "Emerson" is unclear, and may reflect a misstatement or an accidental omission by Plaintiff. The Court's analysis is not affected by the failure to clearly identify this defendant.

well settled" as to constitute a "custom or usage" with the force of law. *Id.* at 691. However, a municipality cannot be held liable under § 1983 on a respondeat superior theory. *Id.*

Defendants first argue that *Monell* liability is inappropriate unless the officer's actions were unconstitutional. (Mot. at 12). The Supreme Court has found that damages are not authorized where a plaintiff seeks damages from a municipality based on the actions of one of its officers, and a jury determines that no constitutional harm is inflicted by the officer. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The fact that regulations might have authorized unconstitutional actions does not change the outcome. *See id.* As this Court has concluded that Plaintiff's constitutional rights were not violated, he cannot hold the City liable for causing a violation of those rights. Summary judgment is therefore **GRANTED**.

Defendants also argue that Plaintiff must allege and present evidence that the allegedly unconstitutional actions were pursuant to a policy statement, ordinance, regulation, or decision officially adopted and promulgated. (Mot. at 12). They contend that the Complaint relies solely on counsel's arguments and conclusions, and that Plaintiff must offer some evidence of a factual dispute to oppose summary judgment. (*Id.* at 13). The Complaint raises a number of allegations suggesting that various customs and practices of the department caused the claimed violations of Plaintiff's rights. Defendants are correct that there is no evidence before this Court to support Plaintiff's argument that the City actually has any of the alleged practices or customs, much less that they caused a violation of Plaintiff's rights. Summary judgment is therefore also appropriate on this ground.

III. Fifth Cause of Action: Civil Conspiracy

Plaintiff alleges that Defendants "combined and agreed to physically assault, falsely arrest, falsely imprison, falsely book, intentionally injure and intentionally cause extreme emotional suffering." (Compl. ¶ 33). Defendants are alleged to have

"perpetuated the mutually supportive agreement to deprive Plaintiffs [sic] of rights secured to him under the federal and California constitutions and law of the State of California, to be free from unreasonable searches and seizures, unjustified force, false arrest, criminal records and unjustified mental suffering." (*Id.*) He claims that Perdue and other officers assaulted, injured, and falsely arrested "plaintiff Eric Harris," provided false evidence to the San Diego District Attorney, including a fabricated story to give the appearance of lawful behavior by defendant "Craft" and unlawful behavior by "Eric Harris."[6] (*Id.* ¶ 34). Plaintiff has submitted no evidence that any of these things took place.

Defendants interpret this cause of action as a claim for damages under 42 U.S.C. § 1985(3). (Mot. at 15). Defendants raise arguments regarding a § 1985(3) requirement that a plaintiff demonstrate that the action was motivated by racial or otherwise class-based, invidious discriminatory animus. (Mot at 15-16 (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992))).

Review of the Complaint reveals no indication that Plaintiff sought to allege a federal claim for civil conspiracy pursuant to § 1985(3), rather than a California tort claim. However, to the extent Plaintiff sought to make a claim pursuant to § 1985(3), Defendants have pointed out that Plaintiff has not produced any evidence to meet his burden to show that the action was motivated by invidious discriminatory animus. Plaintiff did not respond to Defendants' showing. Plaintiff has also not disputed Defendant's assumption that he proceeds under this statute. To the extent this cause of action rests on federal law, summary judgment is **GRANTED** as to the Fifth Cause of Action.

///
///

---

[6] These individuals are not mentioned in any factual allegations, and appear to represent misstatements. There is no plaintiff named Eric Harris.

IV. Eighth Cause of Action: Negligent Employment/Retention/Supervision

Plaintiff alleges that Chief Lansdowne knew or should have known that Perdue, Officer Prokop, and the Doe defendants had a "propensity, character trait, and practice, while purporting to act under color of law, for bigotry and/or violence, and/or dishonesty and/or prevarication." (Compl. ¶ 48). He contends that Lansdowne knew or should have known that they were unfit to serve as peace officers and like to cause harm and injury to the public. (*Id.* ¶ 49). He claims that Lansdowne negligently hired; employed; retained; and failed to properly supervise, train, and control the officers, enabling them to violate the law and written policies. (*Id.* ¶ 50).

Defendants interpret this cause of action as a claim under § 1983, and argue that it fails to meet the requirements. To the extent that Plaintiff sought to bring the eighth cause of action as a claim under § 1983, it must fail for the reasons stated in regard to the second cause of action. To the extent that Plaintiff sought to bring the Eight Cause of Action pursuant to federal law, summary judgment is **GRANTED** to Defendants.

V. The Remaining State Law Claims are Dismissed

This Court has granted summary judgment as to the federal law causes of action. A district court may decline to exercise supplemental jurisdiction over the remaining state law claims after it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). This Court declines to exercise jurisdiction over the remaining state law causes of action. The case is therefore **DISMISSED WITHOUT PREJUDICE** in its entirety.

## CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED** as to causes of action one and two, and **GRANTED** as to causes of action five and eight, to the extent they assert federal law causes of action. The Court declines to exercise jurisdiction over the

///

1  remaining state law claims and **DISMISSES WITHOUT PREJUDICE** this entire
2  action. The Clerk of the Court may close the case.
3    **IT IS SO ORDERED**.
4
5  DATED: May 8, 2014
6
7  _____
   Hon. Roger T. Benitez
   United States District Judge